UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-C-00148 |
| | ) | Judge Joan H. Lefkow |
| **FUNDS IN THE AMOUNT OF TWENTY-TWO THOUSAND, TWO HUNDRED FORTY DOLLARS ($22,240),** | ) ) ) | |
| **FUNDS IN THE AMOUNT OF FIVE THOUSAND DOLLARS ($5,000),** | ) ) | |
| **and** | ) | |
| **ASSORTED JEWELRY VALUED AT APPROXIMATELY $60,100,** | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The United States filed this action under 21 U.S.C. § 881(a)(6) seeking forfeiture of $27,240 in currency and $60,100 in assorted jewelry seized from Claimant Eugene Peterson. Peterson moves to dismiss the government's complaint pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims and Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion [#15] will be denied.[1]

---

[1] This court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is proper under 28 U.S.C. § 1395(b) because the defendant properties were found and seized in this district and will remain in this district during the pendency of the proceedings.

# FACTS[2]

On February 15, 2010, law enforcement agents learned that Robert Torres and Peterson intended to transport approximately eight kilos of heroin to Detroit, Michigan. Agents later learned that Torres expected to be paid for the delivery at approximately 10:00 am on February 17.

On the morning of February 17, agents began surveillance of Peterson's residence in Chicago. Agents saw Torres's car parked near the residence. At approximately 10:39 a.m., Torres approached his car carrying a blue backpack. He put the backpack in his car and drove off, followed by law enforcement agents.

Torres drove to a parking garage on West 15th Place in Chicago. After Torres parked and got out of his car, an officer approached him and asked about the backpack. Torres refused to talk to the officer and placed his hands into his coat pockets. At this time, the officer identified himself as a police officer and drew his weapon. Torres threw the backpack on the floor of the garage and fled. The backpack contained $139,770 in cash, several photographs of Peterson, and Peterson's birth certificate. The officers later called a K-9 dog and the dog reacted positively to the backpack and to the trunk of a silver Mercedes that was parked next to Torres's car. Officers seized the $139,770 for administrative forfeiture as drug proceeds.

Agents then followed Peterson throughout the day as he traveled to various locations in Chicago in a black Honda Prelude. Peterson first drove from his residence to the vicinity of Emerald and Archer Avenues. Agents temporarily lost sight of Peterson but then re-established surveillance when he returned to his residence early in the afternoon. After being at home for just a few minutes, Peterson exited his building carrying a small white bag under his arm. Peterson got back into his car and drove to a gas station, where he met with two men who were

---

[2] The facts are taken from the verified complaint and are accepted as true for the purpose of resolving the pending motion.

sitting in a parked silver BMW.  The men walked back and forth between their car and Peterson's car and gave Peterson a set of keys.  Peterson then drove to another location, where he parked next to a Nissan Altima that was registered under his name in Atlanta, Georgia.  Peterson quickly entered and exited the Altima.  He then got into the black Honda Prelude and drove to his residence.  Less than an hour later, Peterson left his residence again and drove south on Halsted Avenue.  Surveillance was lost for ten to twenty minutes, and the Prelude was next seen in a parking lot adjacent to the I-90/94 expressway on 79th Street.

At about 2:27 pm, Peterson got back into his car and drove to 59th and Kildare.  He parked and removed a backpack and duffle bag from the Prelude.  At this point, three officers approached him.  One officer performed a pat down and felt a bulge in Peterson's coat, which Peterson initially refused to identify.  Peterson then gave verbal permission for the officer to remove the item, which turned out to be $5,000 in rubber-banded bills.  Peterson said that he had withdrawn the money from a bank but that he did not have a withdrawal slip or envelope.  He then consented to a search of his backpack and duffel bag, which contained the assorted jewelry identified in the complaint.  Peterson was taken to a police station for questioning.  There, he gave consent for a search of the Prelude.   After a police dog reacted positively to the rear passenger area of Peterson's car, police found two hidden compartments on each side of the rear seat that contained $22,240 in funds.  Law enforcement agents later learned that eight kilos of heroin had been delivered to Detroit early in the morning on February 16, 2010.

**PLEADING STANDARD FOR FORFEITURE ACTIONS**

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions set forth a heightened pleading standard for forfeiture actions.   Supplemental Rule E, which sets forth the general procedures for forfeitures *in rem* and *quasi in rem*, states that a forfeiture complaint "shall state the circumstances from which the claim arises with such particularity that

3

the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. E(2)(a). Supplemental Rule G sets forth specific procedures for actions *in rem* and requires that a forfeiture complaint (a) be verified, (b) state the grounds for subject-matter jurisdiction and *in rem* jurisdiction, (c) describe the property with "reasonable particularity," (d) state the location where the property was seized and its location when the action was filed, (e) identify the state under which the forfeiture action is brought, and (f) "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(a)-(f). Supplemental Rule G provides that a claimant may move to dismiss a forfeiture action under Federal Rule of Civil Procedure 12(b). Supp. R. G(8)(b)(i). A forfeiture complaint may not be dismissed, however, on the grounds that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. Supp. R. G(8)(b)(ii); 18 U.S.C. § 983(a)(3)(D).

**ANALYSIS**

Peterson argues that the complaint must be dismissed because it does not allege facts sufficient to show that the seized funds were used to facilitate a criminal offense and because it does not give him sufficient notice of the facts underlying the complaint. For the reasons discussed below, Peterson cannot prevail under either argument.

**I.  The Complaint Supports a Reasonable Belief that the Seized Currency Had a Substantial Connection to Criminal Activity**

Peterson asserts that the complaint does not meet the requirements of Supplemental Rule G(2)(f), which states that a complaint must allege sufficiently detailed facts to support a "reasonable belief" that the government will be able to prevail at trial. This forfeiture action was filed under 21 U.S.C. § 881(a)(6), which provides that all money or other things of value "furnished or intended to be furnished by any person in exchange for a controlled substance"

4

shall be subject to forfeiture to the United States. When seeking forfeiture under this section, the government must prove, by a preponderance of the evidence, that there is a "substantial connection" between the property and a criminal offense. *See* 18 U.S.C. § 983(c)(3). It may rely on evidence gathered both before and after the filing of the forfeiture complaint to do so. *Id.* § 983(c)(2). The preponderance of the evidence standard requires a greater showing than "probable cause." *United States* v. *5 S. 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1023 (7th Cir. 2000). In considering a motion to dismiss, the court must decide whether the complaint alleges facts "sufficient to support a reasonable belief that the property is subject to forfeiture." *United States* v. *Funds in the Amt. of Forty-Five Thousand and Fifty Dollars*, No. 06 C 6948, 2007 WL 2323307, at *3 (N.D. Ill. Aug. 9, 2007) (quoting *United States* v. *Mondragon*, 313 F.3d 862, 865-66 (4th Cir. 2002)). The court looks to the totality of the evidence in making this determination. *United States* v. *Funds in the Amt. of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 455 (7th Cir. 2005).

Peterson argues that the complaint does not support a reasonable belief that the seized funds had a substantial connection to criminal activity because it does not allege that he possessed a controlled substance, that he obtained the seized funds in exchange for a controlled substance, or that he was charged with a narcotics offense at the time of the seizure. Taking all of the evidence into account, however, these omissions are not fatal to the government's case at this stage in the proceedings.

The facts alleged in the verified complaint show that government agents received information that Peterson and Torres were going to transport eight kilos of heroin to Detroit and that Torres expected to be paid for the shipment. On the morning when the payment was supposed to occur, they began surveillance of Peterson's residence. They saw Torres approach his car, which was parked near the residence, carrying a blue backpack. Later on, when officers approached Torres and asked him about the backpack, he fled. The backpack,

5

which he dropped on the ground, contained $139,770 in cash, photographs of Peterson, and Peterson's birth certificate. Torres's behavior strongly supports the inference that he was engaged in illicit activity and that this activity was connected to Peterson. *See United States* v. *Ellis*, 499 F.3d 686, 691 (7th Cir. 2007) (noting that, in the probable cause context, it is generally accepted that flight is strong evidence of guilt). In addition, the large sums of money that were seized from both Peterson and Torres, Peterson's suspicious movements, and the dog alerts to Torres's backpack and the hidden compartments in Peterson's car indicate that the funds were connected to illegal drug activity. *See United States* v. *Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 459 (7th Cir. 2005) (dog sniff evidence is entitled to significant probative weight); *Mondragon*, 313 F.3d at 866 (dog alert to the back seat area of car, where money was stored in secret compartments, supported a reasonable belief that currency was linked to drug trafficking); *United States* v. *One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1055 (1st Cir. 1997) (carrying large sums of cash is strong evidence of a connection to illegal activity, even in the absence of drugs or drug paraphernalia), *superseded on other grounds as stated in United States* v. *Lopez-Burgos*, 435 F.3d 1, 2 (1st Cir. 2006). Finally, the timing of the seizure, which coincides with the information received by law enforcement regarding payment for the heroin delivery, suggests that the funds were connected to drug transactions.

Peterson argues that he was only carrying $5,000 when the officers approached him and cites *United States* v. *$506,231 in U.S. Currency*, 125 F.3d 442 (7th Cir. 1997), for the proposition that "[h]aving moderate amounts of currency is not sufficient reason for the government to assume one must be involved in the narcotics trade." (Mot. Dismiss at 3). That case is distinguishable because there the only alleged connection to narcotics, aside from the large amount of cash, was dog sniff evidence that the court rejected, stating that it was "unwilling to take seriously the evidence of the post-seizure dog sniff" and that "other recent

6

cases have verified our belief that the probative value of dog sniffs is, at most, minimal." *Id.* at 453. As noted above, in *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars* the Seventh Circuit reversed its stance on canine evidence. 403 F.3d 448. In the present case, the large amounts of cash, dog sniff evidence, travel patterns, and temporal proximity to a large heroin delivery are enough to support a reasonable belief that the funds were connected to illegal drug transactions.

Finally, Peterson contends that, even if the government has shown a reasonable belief that the $22,240 found in the Prelude is subject to forfeiture, the complaint is insufficient in regards to the $5,000 on Peterson's person and the jewelry in the bag because they were not examined by a police dog. This argument also fails, given the other facts alleged in the complaint. The timing and circumstances surrounding the seizure of the $5,000 and the jewelry strongly indicate that the property was connected to an illegal drug transaction. Moreover, a police dog reacted positively to the car that Peterson had been driving just before the $5,000 and the jewelry were seized. The facts are sufficient to give rise to a reasonable belief that the $5,000 and the jewelry, like the other seized funds, were substantially connected to the sale of narcotics.

**II.     The Complaint Meets the Particularity Requirements of Supplemental Rule E(2)(a)**

Peterson also argues that the complaint does not meet the particularity requirements of Supplemental Rule E(2)(a) because it does not contain allegations that would allow him to "commence an investigation of the facts" and "frame a responsive pleading." Although the language of Rule E differs from Rule G, in practice courts have applied the same "reasonable belief" standard to both rules. *See Mondragon*, 313 F.3d at 865 (evaluating complaint under Rule E(2)(a) using a "reasonable belief" standard); *Funds in the Amt. of Forty-Five Thousand Fifty Dollars*, 2007 WL 2323307, at *3-4 (combining Rule G and Rule E analysis and using "reasonable belief" standard). For the reasons discussed above, the complaint satisfies the

particularity requirements of Rule E. In particular, the complaint includes the date and time of the seizure, a description of the property seized, and detailed information regarding the circumstances and investigation leading up to the seizure. With that information, Peterson can begin investigation of the facts underlying the forfeiture complaint. Because the complaint satisfies the requirements of Supplemental Rules E and G, Peterson's motion to dismiss must be denied.[3]

## CONCLUSION AND ORDER

Defendants' motion to dismiss [#15] is denied. This case is set for a status hearing on November 22, 2011 at 8:30 a.m.

ENTER:

October 31, 2011

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[3] In his reply brief, Peterson asserts for the first time that the complaint fails to meet the standard for pleadings set forth in *Bell Atlantic Corporation* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Because Peterson failed to raise this issue in his motion to dismiss, the argument is waived. *See Narducci* v *Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (The "district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). Moreover, the standards set forth in Supplemental Rules G and E are more stringent than the traditional "notice pleading" standard of Federal Rule of Civil Procedure 8. *See Funds in the Amt. of Forty-Five Thousand Fifty Dollars*, 2007 WL 2323307, at \*3. The court would reject Peterson's argument under *Twombly* for the same reason that it rejects his arguments under Supplemental Rules G and E.

8